IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TERRY SUTPHEN, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> MIDWEST CONSTRUCTION SERVICES, INC., *et al.*, <br><br> Defendants. | CASE NO. 3:20-CV-00648-DAC <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> **MEMORANDUM OPINION AND ORDER** |

**INTRODUCTION**

In this decision, I resolve motions arising from a series of settlement conferences I conducted that led to an agreement resolving the matter. Specifically, I address the following filings, each of which was filed under seal pursuant to an order I issued:

- **ECF #107**: Objections to Magistrate's 12-15-2022 Order Denying Plaintiffs' Motion to Enforce the Terms of the Confidential Settlement Entered Into Between the Parties on or about 5-23-2022/Renewed Motion to Enforce the Settlement Agreement and for an Award of Post-Settlement Interest (**Objections** and **Renewed Motion**). Defendants filed a Joint Response on January 4, 2023 (ECF #108), and Plaintiffs filed a Reply on January 11, 2023 (ECF #109).[1]

- **ECF # 110**: Plaintiffs' Motion to Exclude the Opinions Set Forth by Attorney John Cattie in his 11-2-2022 Letter Marked as Defendants' Exhibit Q

---

[1] Plaintiffs also filed objections to my December 15, 2022 decision in Case Nos. 3:22-CV-01299-JRK (*Terry Sutphen, et al. v. SGI Enterprises, Inc.*) and 3:22-CV-01300-JRK (*Terry Sutphen, et al. v. Finkle Transport, Inc.*). Those matters were referred to me for purposes of conducting settlement discussions "only," with Judge Knepp ordering other proceedings stayed "pending the outcome of settlement proceedings." (Non-document entry of Aug. 26, 2022).

1

(**Motion to Exclude**). Defendants filed a Joint Response on January 25, 2023 (ECF #111), and Plaintiffs filed a Reply on February 1, 2023 (ECF #113).

For the reasons that follow, I hold as follows:

- Because the parties previously consented to my exercising jurisdiction over this matter, Plaintiffs' Objections to my decision denying the First Motion to Enforce (discussed *infra*) without prejudice are nugatory. Further, Plaintiffs may not unilaterally revoke their consent to my exercise of jurisdiction. Accordingly, I conclude I am empowered to decide the Renewed Motion on its merits and without respect to Plaintiffs' Objections.

- As a result of the settlement conferences I conducted, the parties reached a binding, enforceable agreement to resolve Plaintiffs' claims against all Defendants. Further, the parties ultimately reached consensus on additional provisions pertinent to the resolution of those claims. Accordingly, I direct that the parties promptly proceed to execute a written settlement agreement that embodies these provisions and is otherwise consistent with this Memorandum Opinion and Order.

- Plaintiffs' request for an award of post-settlement interest is denied.

- Plaintiffs' request to exclude the opinion of Attorney Cattie is denied as moot.

## BACKGROUND FACTS

Plaintiffs Terry Sutphen and his wife, Beverly, brought suit in this Court on March 27, 2020 following injuries he sustained in an August 20, 2018 vehicular accident. (ECF #1 at PageID 4). Initially named as defendants were Poch Staffing, Inc. d/b/a Trillium Staffing Solutions; Clifford B. Finkle, Jr., Inc.; Taurean Sims; P&P Transportation Services, Inc.; Elmer Kropf; and Penske Truck Leasing Co., L.P. (*Id.* at PageID 1). On August 10, 2020, Plaintiffs amended their Complaint to add the Estate of Elmer Kropf as an additional defendant. (ECF #32 at PageID 156). The Amended Complaint also corrected the name of the lead defendant to Midwest Construction Services, Inc. d/b/a Trillium Driver Solutions (**Trillium**). (*Id.* at PageID 155).[2]

---

[2] Plaintiffs sought leave to file a Second Amended Complaint, but Judge Knepp denied that request on September 22, 2021. (ECF #76).

2

On December 7, 2021, Judge Knepp referred this matter to me for an in-person settlement conference. (Non-document entry of Dec. 7, 2021). On April 25, 2022, I conducted a settlement conference, following which I docketed the following minutes:

> Plaintiffs Terry Sutphen and Beverly Sutphen appeared and were represented by their attorneys Florence Murray and Charles Murray. Defendant Midwest Construction Services, Inc. appeared through its authorized representatives Jim Reid, Amanda Erb, Will Waterman, and George Peterson, and were represented by its attorney Peter Georgiton. Defendants Clifford B. Finkle, Jr., Inc. and Penske Truck Leasing, Inc., appeared through its authorized representatives Clifford Finkle and Tom Faust, and were represented by their attorney Robert C. Tucker. Defendant Taurean Sims appeared and was represented by his attorney Steven Kelley. Defendants P&P Transportation Services, Inc., and Estate of Elmer J. Kropf appeared through their authorized representative Hailey Bandt, and were represented by their attorney Shannon George. Extensive discussions were had with all parties and their counsel. While progress was made, no resolution was reached. With the consent of all parties, I will hold another settlement conference within the next approximately 45 days, on a date to be determined. For the convenience of all involved, the resumed settlement conference will be conducted by video conferencing only. Instructions for accessing the video conference will be provided to the parties in advance. All parties must be present through an authorized representative who has full and complete settlement authority. The parties are to continue further activities in the case pursuant to the existing Case Management Schedule.

(Non-document entry of Apr. 25, 2022).

I held a second settlement conference on May 23, 2022. The day after, I docketed the following minutes:

> Plaintiffs Terry Sutphen and Beverly Sutphen appeared and were represented by their attorneys Florence Murray and Charles Murray. Defendant Midwest Construction Services, Inc. appeared through its authorized representatives Jim Reid, Amanda Erb, Will Waterman, and George Peterson, and were represented by its attorney Peter Georgiton. Defendants Clifford B. Finkle, Jr., Inc. and Penske Truck Leasing, Inc., appeared through their authorized representatives Jamie Finkle and Tom Faust, and were represented by their attorney Robert C. Tucker. Defendant Taurean Sims appeared through, and was represented by, his attorney Steven Kelley. Defendants P&P Transportation Services, Inc., and Estate of Elmer J. Kropf appeared through their authorized representative Hailey Bandt, and were represented by their attorney Shannon George. Extensive discussions were had with all parties and their counsel, which led to agreement on the material terms of a resolution of the claims in this matter. The parties are to circulate an e-mail, with a copy to Clay_Chambers@ohnd.uscourts.gov, recapping the material terms of the agreement reached today. The parties are directed to submit a joint entry dismissing this matter with prejudice

not later than June 23, 2022. The Court reserves jurisdiction to interpret and enforce the terms of the settlement agreement.

(Non-document entry of May 24, 2022).

On July 15, 2022, Plaintiffs filed a sealed Motion to Enforce the Settlement Agreement (**First Motion to Enforce**). (ECF #95). They requested that the Court "1) enforce the settlement agreement reached on May 23, 2022 [*sic*] by the parties in this case, and 2) upon distribution of the funds for the Plaintiffs, order the Plaintiffs to deposit $472,806.43 in an escrow account with verification to the Court for payment of past and future worker compensation payments to and for the benefit of Terry Sutphen." (*Id.* at PageID 581). Judge Knepp referred the First Motion to Enforce to me on July 21, 2022. (First non-document entry of July 21, 2022). Later that day, acting *sua sponte*, I stayed further briefing on the First Motion to Enforce and scheduled a status conference for July 25, 2022. (Second non-document entry of July 21, 2022).

Following that conference, I held additional status conferences with counsel on August 5, 12, and 19, 2022. (Non-document entries of July 25 and August 5, 12, and 19, 2022). During all of these conferences, I worked with counsel to explore the disputed issues and assess whether further motion practice could be avoided. Additionally, on August 26, 2022, the parties filed a Joint Status Report that stated in pertinent part: "All Parties consent to the jurisdiction of U.S. Magistrate Judge Clay over this matter." (ECF #98 at PageID 586). Accordingly, that same day, Judge Knepp directed "this case be[] transferred to the docket of Magistrate Judge Darrell A. Clay for further proceedings." (Non-document entry of August 26, 2022).

Further Joint Status Reports were submitted, and I held additional conferences with counsel. (ECF #100, 101, 102; Non-document entry of Sept. 21, 2022). After receiving separate status reports from the parties on December 14, 2022 (ECF #103 and 104), I entered the following Order the next day:

> I have received the reviewed the separate status reports filed by (i) all plaintiffs [ECF # 103] and (ii) all defendants [ECF # 104]. The video status conference scheduled for Friday, December 16, 2022 is hereby cancelled. The parties are directed to file a further Joint Status Report no later than January 31, 2023 regarding the status of executing a mutually-acceptable Settlement Agreement. Further, Plaintiffs' Motion to Enforce the Settlement Agreement filed on July 15, 2022 [ECF # 95 ] is DENIED without prejudice.

4

(Non-document entry of Dec. 15, 2022). Plaintiffs thereafter filed their Objections and Renewed Motion to Enforce. (ECF #107).

## LAW AND ANALYSIS

**I.     Because the parties consented to my exercising jurisdiction over this matter, Plaintiffs may not object to my decision denying without prejudice their First Motion to Enforce, nor may Plaintiffs unilaterally revoke their consent to my jurisdiction.**

I begin by addressing Plaintiffs' Objections to my December 15, 2022 minute entry that denied without prejudice their First Motion to Enforce. In their filing, Plaintiffs state as follows:

> Plaintiffs object to the Magistrate's 12-15-2022 order in accordance with Federal Rule of Civil Procedure 72, Northern District of Ohio Local Civil Rule 72.3, and/or the provisions of 28 U.S.C. § 636. Plaintiffs recognize that the Magistrate, in his 12-21-2022 Order, has stated that Federal Civil Rule of Civil Procedure 72 and Local Court Rule 72.3 are not applicable as the parties consented to his jurisdiction pursuant to 28 U.S.C. §636. Plaintiffs respectfully disagree. The only remedy is not a direct appeal to the Sixth Circuit Court of Appeals. 28 U.S.C. § 636(c) states "upon consent of parties . . . a magistrate . . . <u>may</u> conduct any or all proceedings in a . . . civil matter . . ." 28 U.S.C. §636(c)(4) states a court may, for good cause shown on its own motion, or under extraordinary circumstances shown, vacate a reference of any civil matter to a magistrate under this subsection. This Court has the power to enforce the settlement, which the Magistrate has failed to do. Judge Knepp may hear objections to the Magistrate's Order of 12-15-2022, in which Plaintiffs' Motion to Enforce the Settlement was denied without ever according Plaintiffs the benefit of briefing the issue. Plaintiffs respectfully state the Magistrate cannot decide the issue since he served as mediator.

(ECF #107 at PageID 613-14) (emphasis in original).[3]

---

[3]     Of note:

> The title magistrate no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in 1990. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, § 321 (1990) ("After the enactment of this Act, each United States magistrate ... shall be known as a United States magistrate judge."). . . . Thus, the word "magistrate" is no longer appropriately used as a noun in federal courts, but only as an adjective, indicating the type of judge to which one is referring. It is the equivalent of calling a district judge "district," a bankruptcy judge "bankruptcy" or a circuit judge "circuit." The proper way to refer to a magistrate judge orally or in writing is "Judge." The official title is United States Magistrate Judge.

5

Plaintiffs' attempt to re-define the import of the parties consenting to my jurisdiction under § 636 is misplaced. Once parties have consented to the jurisdiction of a Magistrate Judge, the Magistrate Judge assumes plenary authority over that proceeding. *Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir. 1984) ("Federal magistrate judges are empowered by the Federal Magistrates Act, 28 U.S.C. § 631 *et seq.* to exercise plenary civil jurisdiction when so designated by the district courts in which they serve and when the parties consent to the exercise of such jurisdiction.") (citing 28 U.S.C. § 636(C)(1)). Pursuant to General Order 2021-06, I was designated by the District Judges of this Court to serve as a Magistrate Judge located in Toledo, Ohio. Further, on August 26, 2022, all parties explicitly and unconditionally consented to my exercising jurisdiction "over this matter." (ECF #98 at PageID 586). Accordingly, under 28 U.S.C. § 636(c) and *Ambrose*, once the parties consented to my jurisdiction, I assumed plenary authority over this matter.

As a consequence, Plaintiffs may not file Objections to any decision I made in this matter after the parties consented to my jurisdiction (as they could if I issued a Report and Recommendation under Fed. R. Civ. P. 72). Rather, they are limited to pursuing an appeal to the Sixth Circuit following final judgment. *Ambrose* makes this unambiguously clear: "This plenary jurisdiction [of a Magistrate Judge] includes the authority to enter final judgment and, if the statutory requirements are met, either party may appeal this judgment directly to the court of appeals without seeking review in the district court. 28 U.S.C. § 636(c)(3)." 729 F.2d at 1085. Thus, Plaintiffs' claim that "[t]he only remedy is not a direct appeal to the Sixth Circuit Court of Appeals" is plainly without merit.[4]

Alternatively, Plaintiffs' Objections assert that "[i]f, and to the extent necessary, Plaintiffs revoke any consent to the Magistrate continuing to have jurisdiction to hear a Motion he has no intention of deciding on its merits." (ECF #107 at PageID 614). Any suggestion that I had no intention of making a decision on the merits of a motion is misplaced; the fact I opted for patience and persistence in trying to resolve a nascent dispute, thereby hoping to spare clients (and their

---

*Bird v. Nat'l Aeronautics & Space Agency*, No. 4:20-CV-275, 2022 WL 90515, at *1 (S.D. Tex. Jan. 7, 2022).

[4] Judge Knepp can, of course, consider Plaintiffs' objections outlined in their two subsequently-filed actions referenced above, because the parties have not consented to my exercising jurisdiction over those matters.

counsel) the inevitable expense and time associated with full motion practice, does not represent an inability or an unwillingness to make a decision. Indeed, such a suggestion borders on an *ad hominem* attack. Counsel are strongly cautioned to avoid further such invective in this or any other proceeding. *See* Ohio R. Prof. Conduct 3.5(a)(6) ("A lawyer shall not do any of the following . . . engage in undignified or discourteous conduct that is degrading to a tribunal."); *see also* Local Civil Rule 83.7(a).

More pertinently, however, case law does not permit self-effectuating withdrawal of consent to a Magistrate Judge's jurisdiction under the circumstances present here. The Federal Magistrates Act (adopted before the nomenclature change to "Magistrate Judge," *see* fn. 1) provides that parties may "withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(2). But once given, there is no absolute right to withdraw consent; instead, any attempt to withdraw comes under scrutiny from the court under § 636(c)(4). *Forsyth v. Brigner*, 156 F.3d 1229 (6th Cir.) (table) ("A party in a civil case has no absolute right to withdraw consent to trial and other proceedings before a magistrate judge."), *cert. denied*, 525 U.S. 970 (1998); *Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987) (concluding that "there is no absolute right to withdraw a validly given consent to trial before a magistrate [judge]"). Under § 636(c)(4), a court "may, for good cause shown on its own motion . . . vacate a reference of a civil matter to a Magistrate Judge under this subsection." 28 U.S.C. § 636(c)(4).[5] Alternatively, a party may show "extraordinary circumstances" to vacate the reference. *Id.*

"Extraordinary circumstances" sufficient to vacate a reference remains undefined. *Murret v. City of Kenner*, 894 F.2d 693, 695 (5th Cir. 1990). However, case law provides some examples of what is and is not extraordinary circumstances. For example, failure of all parties to consent to the Magistrate Judge's jurisdiction and retaliatory acts by the Magistrate Judge amounting to personal bias have been deemed extraordinary circumstances. *Murret*, 894 F.2d at 695-96; *Cooley v. Foti*, Civ. A. No. 86-3704, 1988 WL 10166, at *5 (E.D. La. Feb. 5, 1988). But adverse rulings, allegations of bias, scheduling issues, and the grant of a retrial do not constitute extraordinary circumstances

---

[5] Sixth Circuit caselaw and 28 U.S.C. § 636 use "reference" when both parties consent to Magistrate Judge jurisdiction. The Sixth Circuit has also used "referral" in instances where both parties have consented to complete jurisdiction of the Magistrate Judge. *See, e.g., Moses v. Sterling Com. (Am.), Inc.*, 122 F. App'x 177, 180-81 (6th Cir. 2005).

7

worthy of allowing the withdrawal of consent. *See, e.g.*, *Moses*, 122 F. App'x at 180; *Rivera v. Rivera*, 216 F.R.D. 655, 661 (D. Kan. 2003); *Frank v. County of Hudson*, 962 F. Supp. 41, 44 (D.N.J. 1997). So too is general dissatisfaction with a Magistrate Judge's handling of a case. *See Milhous v. Metro. Gov't of Nashville & Davidson County*, No. 99–5685, 2000 WL 876396, at *1 (6th Cir. June 21, 2000) ("It is equally clear that no 'extraordinary circumstances' were shown here but, rather, the plaintiff simply was displeased with the [magistrate judge's] rulings on the motions to dismiss.").

"Good cause," while a lesser standard than extraordinary circumstances, is also undefined. In none of the cases mentioned previously did the court find good cause to withdraw consent. Similarly, the Ninth Circuit upheld a finding of no good cause that arose from denial of the right to call witnesses. *See Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993). Ultimately, even the good cause requirement imposes a difficult standard for attempting to withdraw consent to a Magistrate Judge's jurisdiction.

Here, Plaintiffs do not allege either extraordinary circumstances or good cause to withdraw consent. Beyond their apparent dissatisfaction with my decision to defer motion practice until it was clear negotiations would not lead to a consensus resolution, the only specific reason they proffer as grounds to withdraw consent is that I served as mediator. (ECF #107 at PageID 614).[6]

---

[6] Plaintiffs also assert I denied without prejudice their First Motion to Enforce "without the benefit of briefing." (ECF #109 at PageID 1014). Not quite. Plaintiffs' First Motion to Enforce, filed on July 12, 2022 (ECF #95), was three pages long and explained what they sought and the basis for their request. Thus, if I did not have the benefit of sufficient briefing from them, it was only because they did not provide a more detailed Memorandum in Support with their motion, as required by Local Civil Rule 7.2(c), which states: "The moving party must serve and file with its motion a memorandum of the points and authorities on which it relies in support of the motion."

In any event, the specific relief Plaintiffs sought in the First Motion to Enforce – "Plaintiffs to deposit $472,806.43 in an escrow account with verification to the Court for payment of past and future **worker compensation** payments to and for the benefit of Terry Sutphen") (*Id.* at PageID 581) (emphasis added) – appears moot in light of the subsequent arbitration proceedings between Plaintiffs and Mr. Sutphen's employer, SGI Enterprises, Inc. that resolved issues relating to the worker's compensation lien. (*See* ECF #107-2 at PageID 627-43). In contrast, the Renewed Motion seeks fundamentally different relief respecting Medicare lien issues: "order the Defendants to pay the remaining settlement proceeds of $2,250,290 with Plaintiff[s] paying from these sums SGI and setting aside whatever sum, $33,000 or otherwise, **Medicare determines is required**." (ECF #107-1 at PageID 625-26) (emphasis added). In the end, any lack of briefing on the First Motion to Enforce is much ado about nothing.

8

But this is not a sufficient basis for me to abstain from further involvement in this proceeding. "Presiding over a settlement conference alone is insufficient grounds for recusal." *Bhatti v. County of Sacramento*, No. CIV. S-05-0754 WBS EFB, 2009 WL 1451709, at *2 (E.D. Cal. May 22, 2009). This is because "if a judge's 'familiarity with the facts of a case stem from [the judge's] judicial conduct in presiding over earlier proceedings,' the judge typically need not recuse himself or herself, even if the judge has formed an opinion about the case." *Lopez v. XTEL Const. Group, LLC*, 796 F. Supp. 2d 693, 696 (D. Md. 2011) (quoting *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987)). Thus, "if a judge presides over a settlement conference, that '[g]enerally . . . does not, by itself, create an appearance of partiality." *Id.* (quoting *Wiley v. United Parcel Serv., Inc.,* 11 F. App'x 181, 182 (4th Cir. 2001)); *see also Microboard Processing, Inc. v. Creston Elecs., Inc.*, No. 3:09 CV 00708 JBA, 2011 WL 1213456, at *1 (D. Conn. Jan. 11, 2011) (noting that under Second Circuit caselaw, "a judicial officer is not recused from deciding a motion to enforce a settlement because of his or her involvement in the underlying settlement negotiations"), *report and recommendation adopted*, 2011 WL 1213177 (D. Conn. Mar. 29, 2011); *McGuire v. Warner*, No. 05-40185, 2009 WL 3586527, at *4 (E.D. Mich. Oct. 29, 2009) (rejecting challenge to Magistrate Judge's authority to decide motion to enforce settlement "merely because th[e] Court conducted settlement conferences with the parties during the course of this litigation").

For the foregoing reasons, I conclude that Plaintiffs' challenges to my authority to decide the issues presented in their filings are without merit. I hereby deny the Objections, reject their purported withdrawal of consent to my jurisdiction, and turn to deciding the substance of the Renewed Motion.

**II.     The parties reached a binding, enforceable agreement to resolve this matter; therefore, an order directing them to execute such an agreement must issue.**

As noted above, Plaintiffs' Renewed Motion seeks an order from the Court requiring "Defendants to pay the remaining settlement proceeds of $2,250,290 with Plaintiff[s] paying from these sums SGI, and setting aside whatever sum, $33,000 or otherwise, Medicare determines is required." (ECF #107-1 at PageID 626). In their Reply Brief, Plaintiffs indicate Medicare has approved "a Set Aside in the sum of $38,349." (ECF #109 at PageID 1007).

"A district court has broad, inherent authority to enforce a settlement agreement in litigation pending before it, even if the agreement has not been reduced to writing." *Chenault v.*

*Randstad USA Mfg. & Logistics*, No. 5:18-CV-276-KKC, 2019 WL 2179211, at *4 (E.D. Ky. May 20, 2019). "The formation and enforceability of a purported settlement agreement are covered by state contract law." *Byrd v. Time Warner Cable*, No. 1:09CV772, 2012 WL 368208, at *3 (S.D. Ohio Feb. 3, 2012) (citing *Smith v. ABN AMRO Mort. Group Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011), *cert. denied*, 566 U.S. 916 (2012)), *aff'd*, 507 F. App'x 565 (6th Cir. 2012), *cert. denied*, 571 U.S. 1007 (2013). In *Byrd*, District Judge Dlott further explained the applicable law as follows:

> Under Ohio law, "a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and acceptance." *Smith*, 434 F. App'x at 460 (citing *Rulli v. Fan Co.*, 683 N.E.2d 337, 338 (1997)). Although "it is preferable that a settlement be memorialized in writing, . . . an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Id.* (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (2002)). "When the parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Id.* (citing *Re/Max Int'l., Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001)). "[A] district court 'has the inherent authority and equitable power to enforce agreements in settlement of litigation before it, even if that agreement has not been reduced to writing.'" *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010) (*quoting Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 76–77 (6th Cir. 1985)); *see also RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.").

*Id.*

Here, it is indisputable that on May 23, 2022, the parties reached an agreement to resolve this matter. That much is clear from my minute entry of the following day noting that "Extensive discussions were had with all parties and their counsel, which led to agreement on the material terms of a resolution of the claims in this matter." (Non-document entry of May 24, 2022). Importantly, to date, no party has ever suggested that my entry confirming agreement on material terms was inaccurate. Moreover, as directed in my minute entry, on May 23rd at 11:23 p.m. counsel for Defendant Trillium sent the following e-mail message to all other counsel and my chambers:

All-

I wanted to take a moment to memorialize the settlement agreement that we entered into today by and between Plaintiff Terry Sutphen, Plaintiff Beverly Sutphen (collectively, "Plaintiffs"), Defendant Midwest Construction Services, Inc. dba Trillium Driver Solutions ("Trillium"), Defendant Clifford B. Finkle, Jr., Inc. ("Finkle"), Defendant the Estate of Elmer Kropf ("Kropf"), Penske Truck Leasing Company, L.P. ("Penske"), David Price Metals ("Price"), SGI Enterprises, Inc. ("SGI"), Home Owners Insurance Company ("Home Owners"), and Travelers Indemnity Company of Connecticut ("Travelers," collectively the "Parties"). The terms of the Agreement are as follows and will be more formally embodied in a final Settlement Agreement not inconsistent with the terms set forth herein.

(1) Defendants Trillium, Finkle, and P&P shall pay Plaintiffs the sum of $3,500,290.00 (the "Settlement Amount") within 30 days. The Settlement Amount will be paid by Defendants Trillium, Finkle, and P&P (and/or their respective insurers) as follows: $969,290.00 by Finkle and/or its insurers, $131,000 by P&P and/or its insurers, and the remainder ($2,400,000) by Trillium and/or its insurers.

(2) The Parties agree to maintain the Settlement Agreement as confidential subject to typical exceptions, such as disclosures to attorneys, tax preparers, accountants, insurers, and reinsurers. The Parties allocate $290 of the Settlement Amount to the confidentiality clause.

(3) Trillium agrees to pay David Price Metals and/or its subrogated insurers (including Travelers) for its property damage claim the sum of $30,000.

(4) Trillium agrees to pay P&P Transportation and/or its subrogated insurers (including Home Owners) for its property damage claim the sum of $20,000.

(5) Plaintiffs have indicated their intention to enter into a structured settlement arrangement with respect to all or part of the Settlement Amount. Defendants agree to cooperate with Plaintiffs to pay the Settlement Amount as directed by Plaintiffs and their counsel. Plaintiffs agree to cooperate with Defendants' insurers in connection with setting up a structured settlement.

(6) In consideration of the Settlement Amount and the covenants and agreements between and among the Parties, the Parties agree to release all claims they have against each other in any way arising to or relating to the truck accident that occurred on August 20, 2018 involving Plaintiff Terry Sutphen (the "Accident").

(7) SGI has reached an agreement with Plaintiffs with respect to the satisfaction of its lien for workers' compensation medical and indemnity paid in connection with the Accident. The terms of the agreement between Plaintiffs and SGI are subject to

11

a separate agreement not encompassed herein. However, in consideration of this agreement, SGI agrees to release all claims it may have against Trillium, Finkle, Sims, Kropf, Penske, and P&P and their employees, owners, officers, directors, shareholders, members, principals, agents, and affiliates arising out of or relating to the Accident.

(8)  Upon execution of a final Settlement Agreement (which shall occur within 30 days), and within five days of the payment of the Settlement Amount, all Parties agree to dismiss all claims, counterclaims, cross-claims, and third party claims asserted against each other with prejudice, including, but not limited to all claims asserted in the U.S. District Court for the Northern District of Ohio, styled Sutphen v. Midwest Construction, Inc., et al., Case No. 20-CV-000648 and Homeowners Insurance Company v. Sims, et al., Sandusky County Court of Common Pleas Case No. 21CV644.

(9)  Plaintiffs shall provide documentation to the Parties that all Medicaid and/or Medicare liens have been satisfied and/or that there are no applicable liens.

Please confirm your agreement to these terms by replying all to those on this e-mail with an electronic signature "i.e. /s/ Peter J. Georgiton". If for some reason you believe I have not accurately included all of the terms of our agreement, please let me know.

Thanks,

Peter

(ECF #108-2 at PageID 819-20). At 9:35 a.m. on May 24, 2022, counsel for Finkle and Penske responded by saying that, other than a clarification on the amount it was to pay, "that is all correct . . . ." (*Id.* at PageID 816). At 10:07 a.m. that same day, counsel for Kropf and P&P responded by saying in part "you are correct with regard to the sums my clients' insurer is paying . . . ." (*Id.* at 815). And on May 25, 2023, counsel for Plaintiffs stated in pertinent part as follows: "You are all correct in your understanding of the terms of the settlement." (*Id.* at PageID 810-11). There can be no doubt that this series of e-mail messages contain "sufficient particularity to form a binding contract . . . ." *See Smith,* 434 F. App'x at 460.

Matters began foundering, however, as the parties turned their attention to the process of formally memorializing their agreement, in particular as regards lien rights held or potentially held by third parties. This includes the Ohio Bureau of Workers' Compensation and Medicare. As noted in the original e-mail from Trillium's counsel, the parties initially contemplated that

Plaintiffs and SGI had agreed "with respect to the satisfaction of [SGI's] lien for workers' compensation medical and indemnity paid in connection with the Accident. The terms of the agreement between Plaintiffs and SGI are subject to a separate agreement not encompassed herein." (ECF #108-2 at PageID at 820).

But SGI's counsel responded by indicating he was "not aware of any agreement with Plaintiffs with respect to the satisfaction of SGI's lien for worker's compensation benefits paid to date and ongoing." (*Id.* at 814). Plaintiffs' counsel then responded in part by saying Plaintiffs had "agreed to repay the statutory amount required for WC paid to date and look forward to receiving that number from you today." (*Id.* at PageID 813; *see also* Ohio Rev. Code § 4123.931(B) (outlining rights of statutory subrogee if claimant and third-party reach settlement)). Counsel for Trillium then noted: "The settlement between the parties is based upon the understanding and condition that the workers' compensation liens **(and, in fact, any and all liens)** would be resolved by Plaintiffs and that there would be no further claims to be asserted by anyone against the Defendants." (*Id.* at PageID 812) (emphasis added). Counsel for Kropf and P&P echoed this, stating: "I also agree . . . it is our understanding that the settlement with Plaintiffs constitute a full and final resolution of the claims against the Defendants in the pending litigation and that Plaintiffs were to be responsible for **any and all liens**, including those of [SGI]." (*Id.* at PageID 811). This then produced the response from Plaintiffs' counsel described above, to the effect that defense counsel were "correct in [their] understanding of the terms of the settlement." (*Id.* at PageID 811).

Ultimately, Plaintiffs and SGI could not agree on the amount to be set aside in satisfaction of SGI's statutory subrogation rights and submitted that question to binding arbitration. The arbitrator decided that question in a written decision issued on October 25, 2022. (ECF #107-2 at PageID 627-37). While that decision was pending, the parties also began addressing whether a Medicare Set Aside (MSA)[7] was necessary and, if so, in what amount. Although Plaintiffs

---

[7] As one court has explained:

> The Medicare Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y, provides that Medicare may obtain secondary payer status if payment has been made, or can reasonably be expected to be made, under a worker's compensation plan or law, an automobile or liability insurance policy, or no fault insurance (all of which are

13

maintained that an MSA was not required (*see, e.g.*, ECF #108-10 at PageID 902), Plaintiffs ultimately elected to make an MSA submission to Centers for Medicare & Medicare Services (CMS) on or about October 13, 2022 (*see* ECF #109-1). Plaintiffs proposed amount an MSA of $26,606.00. (*Id.*).

On December 29, 2022, CMS approved an MSA in the amount of $38,349.00, such amount having been determined to "adequately consider[] Medicare's interests with respect to Medicare-covered future medical items and services, including prescription drugs." (*Id.*) This amount was less than what Defendants originally indicated they thought necessary, although on December 13, 2022 they advised Plaintiffs' counsel that "we can accept your proposed set aside amount, provided that CMS approves it." (ECF #108-19 at PageID 986). Defendants reiterated their willingness to proceed with finalizing a settlement agreement based on the CMS-approved MSA amount:

> However, unbeknownst to Defendants, CMS approved the MSA on December 29, 2022. Plaintiffs' counsel did not inform Defendants' counsel about this approval. Instead, Defendants first learned of the approval from Plaintiffs' January 11, 2023 reply brief. In light of CMS's approval, on January 20, 2023, Trillium's counsel sent Plaintiffs' counsel a revised final settlement agreement that reflected CMS's approval and structured payments previously made. Plaintiffs' counsel did not respond to this email.

(ECF #112 at PageID 1058).[8]

---

> defined as primary plans). What this practically means is that under the MSP, if Medicare makes a payment that the primary plan is responsible for, then Medicare may seek reimbursement against any entity that is required to make the payment or against anyone that has received payment from the responsible entity.
>
> In the settlement context, one method that has emerged to comply with the MSP is to create a set-aside arrangement where a portion of the settlement is allocated for the injured party's future medical expenses (i.e., an MSA). Whether the MSP applies to every tort settlement, thus likely requiring an MSA, is a question that confounds practitioners and litigants.

*Early v. Carnival Corp.*, No. 12-20478-CIV, 2013 WL 462580, at *1–2 (S.D. Fla. Feb. 7, 2013) (citations omitted).

[8] Plaintiffs' Status Report, filed the next day, acknowledged that Defendants had provided an updated settlement agreement draft on January 20, 2023. (ECF #114 at PageID 1101). Plaintiffs stated: "There is no point in discussion with Defendants, as they continue to insist on

14

Based on the foregoing, I conclude the parties reached a binding enforceable agreement during the May 23, 2022 settlement conference, as delineated in the e-mail exchanges excerpted above. Subsequently, the parties agreed to include a supplemental provision establishing an MSA in an amount ultimately approved by CMS, which was $38,349.00. I therefore **ORDER** that the parties promptly proceed to execute a formal written settlement agreement consistent with the foregoing, and to perform all outstanding obligations created by that document.

### III.     Plaintiffs' request for an award of post-settlement interest is denied.

Plaintiffs' Renewed Motion further requests that I award them "post-settlement interest." (ECF #107-1 at PageID 625). They contend that post-settlement interest is a component of prejudgment interest that is governed by Ohio law. (*Id.*). The Renewed Motion argued that Plaintiffs "could be earn[ing]" 3.9% interest on the unpaid portion of the settlement sum, which totals $2,250,290.00.[9] (*Id.*) The Renewed Motion, however, did not provide any legal support for use of a 3.9% interest rate, if interest were awarded.[10]

Defendants responded that post-settlement interest was not appropriate, because the settlement payment has not yet become "due and payable" within the meaning of Ohio Rev. Code § 1343.03.[11] (ECF #108 at PageID 658). Defendants assert that a material condition of the settlement was satisfaction of third-party liens, which "has not yet occurred." (*Id.*). Defendants also posit that the parties' agreement specified that "there would be no post-settlement interest so long

---

terms which were not part of the 5-23-2022 settlement agreement (last revised by Defendants on or about 1-20-2023) as explained in Plaintiffs' Memorandum in Support of their Objections and Motions." (*Id.*).

[9]     Even without the fully executed settlement agreement, Plaintiffs received from two Defendants a total of $1,250,000 of the agreed-upon settlement sum. (*See* ECF #107-1 at PageID 619).

[10]     By statute, the appliable interest rate in Ohio for 2022 was 3.0%. That amount increased to 5.0% for 2023. *See* Ohio Department of Taxation, Annual Certified Interest Rates, http://tax.ohio.gov/researcher/interest-rates (last accessed May 15, 2023).

[11]     "In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable . . . upon any settlement between parties . . . the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." Ohio Rev. Code § 1343.03(A).

15

as the settlement payments were received within 30 days of the parties' execution of the written agreement." (*Id.*)

In reply, Plaintiffs assert "they lack the means to satisfy the [third-party] liens until the settlement proceeds are paid." (ECF #109 at PageID 1019). They also contend that the parties' agreement, as reflected in the May 23, 2022 e-mail from Trillium's counsel, did not tie the 30-day payment window to execution of a settlement agreement. (*Id.*). Instead, they maintain that Defendants inserted this term in drafts of the settlement agreement that were subsequently provided. (*Id.*)

In a diversity jurisdiction case such as this, "state law governs prejudgment interest and federal law governs postjudgment interest." *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 753 F. Supp. 2d 665, 667 (E.D. Ky. 2010). Plaintiffs contend that prejudgment interest includes post-settlement interest (ECF #107-1 at PageID 625) but cite no authority for that proposition. I have been unable to locate any authority directly supporting this assertion, but I will assume it to be true for purposes of resolving Plaintiffs' request.

The Ohio Supreme Court, in *Bellman v. Am. Int'l Grp.*, 865 N.E.2d 853 (Ohio 2007), established the following regarding post-settlement interest:

> The date of a written settlement agreement becomes the date from which postsettlement interest accrues, unless the parties to such a settlement agreement negotiate a different due and payable date and incorporate that into the written settlement agreement. When an agreement fails to incorporate a separate due and payable date, the parol-evidence rule assumes that the formal written agreement embodies all of the terms of the agreement between the parties and therefore precludes extrinsic evidence to vary or contradict its terms. Thus, unless otherwise specified, a claimant is entitled to postsettlement interest from the date of settlement agreement until the date of payment. Those who delay in forwarding settlement drafts incur postsettlement interest from the date of the agreement unless a different due and payable date is specified in the settlement agreement.

*Id.* at 858.

Here, as noted above, the May 23, 2022 e-mail from Trillium's counsel stated in pertinent part:

> The terms of the Agreement are as follows and will be more formally embodied in a final Settlement Agreement not inconsistent with the terms set forth herein.

16

> (1) Defendants Trillium, Finkle, and P&P shall pay Plaintiffs the sum of $3,500,290.00 (the "Settlement Amount") within 30 days. The Settlement Amount will be paid by Defendants Trillium, Finkle, and P&P (and/or their respective insurers) as follows: $969,290.00 by Finkle and/or its insurers, $131,000 by P&P and/or its insurers, and the remainder ($2,400,000) by Trillium and/or its insurers.

(ECF #108-1 at PageID 819). Plaintiffs' argument requires that the language of paragraph (1) of the foregoing e-mail be read in isolation; in other words, they contend that – regardless of any other circumstances – Defendants were absolutely bound to pay in full the entire settlement amount not later than June 22, 2022. I do not concur in this reading, because it ignores critical language from the preceding paragraph. Not giving effect to that language would violate the "general principle of contract law that all provisions of a contract should be given meaning . . . ." *City of Lancaster v. Flagstar Bank, FSB*, 789 F. Supp. 2d 873, 879 (S.D. Ohio 2011).

Specifically, the preceding paragraph expressly noted the parties would be entering into "a final Settlement Agreement not inconsistent with the terms" outlined in the May 23, 2022 e-mail. (ECF #108-1 at PageID 819). I therefore conclude that entry into the written settlement agreement was, in essence, a condition precedent to triggering the obligation to pay within 30 days. And because the parties have not yet executed a written agreement consistent with the terms of the May 23, 2022, Defendants' obligation to pay the settlement sum to Plaintiffs has not yet begun to run and thus post-settlement interest is not owed.

This conclusion is consistent with *Bellman*. As quoted above, under Ohio law, the claimant's entitlement to post-settlement interest from the date of settlement is abated unless the parties have specified otherwise in their agreement. *Bellman*, 865 N.E.2d 853. That is what the parties did here, when their counsel each manifested affirmative assent to the e-mail string specifying they were to enter into a written Settlement Agreement consistent with the terms of the e-mail. (ECF #108-2 at PageID 819-20). By doing so, the parties "otherwise specified" that post-settlement interest would not begin to run unless Defendants failed to pay the settlement amount in full within 30 days after execution of the written agreement. Because that agreement has not yet been signed, the remaining balance of the settlement sum has not yet become due and payable within the meaning of Ohio Rev. Code § 1343.03.

I therefore conclude that Plaintiffs' request for an award of post-settlement interested must be, and is hereby, **DENIED.**

**IV.     Plaintiffs' request to exclude the opinion of Attorney Cattie is denied as moot.**

When Defendants filed their Joint Response to Plaintiffs Objections and Renewed Motion, they included as an exhibit a November 2, 2022 letter from John Cattie, Jr., Esq., opining that an MSA should be established in the sum of either $183,655.32 or $134,437.91, depending on the attorney fee arrangement between Plaintiffs and their counsel. (ECF #108-17 at PageID 963-82). Plaintiffs responded by filing the Motion to Exclude (ECF #110), arguing that Attorney Cattie's opinions should be excluded they fail to meet the requirements of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Defendants then filed a Joint Response (ECF #111) and Plaintiffs filed a Reply Memorandum (ECF #113).

Because CMS ultimately provided an MSA approval in the amount of $38,349 – which was more than Plaintiffs contended, but below what Defendants and Attorney Cattie proposed – it was ultimately not necessary for me to take Attorney Cattie's opinions into consideration in resolving Plaintiffs' Renewed Motion. Accordingly, I hereby **DENY** Plaintiffs' Motion to Exclude because the issues it raises are moot.

## Conclusion

For the foregoing reasons and in the interests of justice, I hereby ORDER as follows:

- Plaintiffs' purported "Objections" to my decision denying their First Motion to Enforce are denied.

- The parties are promptly to proceed with executing a formal written settlement agreement that is consistent with the determinations contained in this opinion, and to perform all outstanding obligations created by that document.

- Plaintiffs' request for an award of post-settlement interest is denied.

- Plaintiffs' Motion to Exclude is denied because the issues it raises are moot.

**IT IS SO ORDERED.**

**Date: May 15, 2023**

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE